UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL C. ROWE,

      Plaintiff,

 v.

SHERIFF TY TRENARY, *et al.*,

      Defendants.

Case No. C17-0805-RAJ-MAT

REPORT AND RECOMMENDATION

INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action brought under 42 U.S.C. § 1983. Plaintiff Michael Rowe alleges in this action that City of Bothell Police Officer Adam Briels initiated an unlawful traffic stop, and effectuated an unlawful arrest, in March 2017.[1] This matter comes before the Court at the present time on defendant Briels' motion for summary judgment and on plaintiff's cross-motion for summary judgment.[2] The Court, having reviewed the parties' motions, all briefing related thereto, and the balance of the record, concludes that defendant's motion for summary judgment should be

---

[1] The operative complaint in this action is plaintiff's amended complaint filed on July 10, 2017. (Dkt. 11.)

[2] It is not clear that plaintiff actually intended to file a cross-motion for summary judgment as opposed to simply a response to defendant's summary judgment motion. However, plaintiff identified his submission as a motion and the submission was therefore placed on the docket as a cross-motion for summary judgment. (*See* Dkt. 30.)

REPORT AND RECOMMENDATION
PAGE - 1

granted, plaintiff's cross-motion for summary judgment should be denied, and plaintiff's amended complaint and this action should be dismissed with prejudice.

BACKGROUND

On February 27, 2017, Mr. Rowe was scheduled to appear in Snohomish County Superior Court to enter pleas in two separate criminal cases, one in which he was charged with second degree burglary and one in which he was charged with possession of a controlled substance. (*See* Dkt. 28, Exs. 1-8.) Mr. Rowe failed to appear for his plea hearing and, on March 2, 2017, the Superior Court issued warrants for Mr. Rowe's arrest in both cases. (*See id.*, Exs. 7-8.) On March 6, 2017, Mr. Rowe appeared in court and a judge quashed the two warrants. (*See id.*, Exs. 9-10.) The judge's orders quashing the warrants were filed with the clerk's office at 1:00 p.m. that same day. (*See id.*)

Later that evening, at approximately 11:40 p.m., Officer Briels conducted a traffic stop on Mr. Rowe's vehicle because the license plate had a dirty, yellow-tinted cover making the numbers and letters nearly illegible. (*See* Dkt. 27, ¶ 5, and Ex. 1.) Mr. Rowe provided Officer Briels with his license, registration, and insurance, and he also informed Officer Briels that his license was suspended. (*See id.*, ¶ 7, and Ex. 1 at 2.) Officer Briels thereafter asked Bothell Police Department dispatch to run a check on Mr. Rowe with the Washington Crime Information Center (WACIC), a statewide database which contains criminal background records and warrant information. (*Id.*, ¶ 8, and Ex. 1 at 2.) Dispatch informed Officer Briels that there were two outstanding felony warrants for Mr. Rowe's arrest, both originating with the Snohomish County Sheriff. (*See id.*, ¶ 10, Ex. 1 at 2, and Ex. 3.)

Officer Briels placed Mr. Rowe in handcuffs and then asked dispatch to confirm the validity of the two warrants, (*Id.*, ¶ 11, and Ex. 1 at 2.) Dispatch confirmed with the Snohomish

REPORT AND RECOMMENDATION
PAGE - 2

County Sheriff's Office that the warrants were active and that the Sheriff's Office wanted Mr. Rowe arrested on those warrants. (*See* Dkt. 27, ¶ 13, and Ex. 2.) Mr. Rowe states in his verified complaint that he tried to explain to Officer Briels that he had been to court that day, and he handed Officer Briels his court papers, but Officer Briels refused to look at them. (Dkt. 11 at 3.) Officer Briels arrested Mr. Rowe on the warrants and transported him to the Snohomish County Jail. (Dkt. 27, ¶ 14 and Ex. 1.) Officer Briels subsequently issued Mr. Rowe a citation for driving with a suspended license. (*See id.*, ¶ 14 and Exs. 1, 4.)

On March 8, 2017, Mr. Rowe appeared before Snohomish County Superior Court Judge Richard Okrent for a return on warrant hearing, and Judge Okrent ordered plaintiff released on his own recognizance. (Dkt. 28, Ex. 11.) The Snohomish County Sheriff's Office formally returned the warrants to the court the following day, March 9, 2017. (*Id.*, Exs. 12, 13.) Notations on the returned warrants indicate that they were cleared from the system on March 7, 2017, the day after the warrants were quashed and Mr. Rowe was arrested. (*See id.*)

Mr. Rowe filed the instant action on May 23, 2017 after he had been returned to custody and was awaiting trial on a number of charges including a bank robbery committed on March 24, 2017, approximately two weeks after he was released on his own recognizance. (*See* Dkt. 1; Dkt. 28, Exs. 14, 15.) On December 22, 2017, Mr. Rowe entered guilty pleas in four separate Snohomish County Superior Court cases, and he is currently in the custody of the Washington Department of Corrections serving a 15 year sentence. (*See* Dkt. 28, Exs. 20-23.)

## DISCUSSION

Plaintiff alleges in this action that Officer Briels initiated an unlawful traffic stop, and effectuated an unlawful arrest, on March 6, 2017. (Dkt. 11 at 3, 6.) Plaintiff claims that Officer Briels did not have probable cause to stop him in the first place, and that Officer Briels

1  subsequently failed to properly investigate the validity of the warrants which served as the basis

2  for plaintiff's arrest. (*See* Dkt. 11 at 3, 6, 9.)

3                                    Summary Judgment Standard

4       Summary judgment is appropriate when a "movant shows that there is no genuine dispute

5  as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

6  56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails

7  to make a sufficient showing on an essential element of his case with respect to which he has the

8  burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears

9  the initial burden of showing the district court "that there is an absence of evidence to support the

10 nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing

11 affirmative evidence that negates an essential element of the nonmovant's case, or by establishing

12 that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at

13 trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000).

14 The burden then shifts to the nonmoving party to establish a genuine issue of material fact.

15 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must

16 draw all reasonable inferences in favor of the nonmoving party. *Id*. at 585-87.

17      In supporting a factual position, a party must "cit[e] to particular parts of materials in the

18 record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine

19 dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R.

20 Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some

21 metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585. "[T]he

22 requirement is that there be no *genuine* issue of material fact. . . . Only disputes over facts that

23 might affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc*., 343 F.3d 1107, 1112 (9th Cir. 2003).

<u>Section 1983 Standard</u>

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

<u>Traffic Stop</u>

Plaintiff asserts that defendant Briels did not have probable cause to stop him on the night of March 6, 2017. (Dkt. 11 at 6.) Plaintiff suggests that the traffic stop, which defendant Briels

told him was because he had a dirty license plate, was actually a pretext to investigate drug activity. (Dkt. 11 at 3.) Plaintiff claims that his license plate was not dirty, and that defendant Briels "profiled" him and his vehicle as he was exiting a hotel known for drug activity. (*Id*.) Defendant Briels denies that he stopped plaintiff because plaintiff exited the hotel and denies knowing that plaintiff was even at the hotel. (*See* Dkt. 26 at 8; Dkt. 27, ¶ 6.) Defendant Briels also correctly points out that the question of whether the traffic stop was a mere pretext to investigate potential drug activity is irrelevant to the constitutional question before this Court.

The United States Supreme Court has made clear that the constitutional reasonableness of a traffic stop does not depend on the actual motivations of the officer involved. *Whren v. United States*, 517 U.S. 806, 813 (1996). The decision by a police officer to stop an automobile is reasonable so long as the officer has probable cause to believe a traffic violation has occurred. *Id*. at 810. Thus, the only relevant question in this case is whether defendant Briels had probable cause to believe that plaintiff had committed a traffic violation.

According to defendant Briels, plaintiff's license plate had a dirty yellow-tinted cover which rendered the numbers and letters nearly illegible. (*See* Dkt. 27, ¶ 5 and Ex. 1 at 2.) It is, in fact, a traffic violation to drive a vehicle with an illegible license plate. *See* RCW 46.16A.200(7)(b) and (c). Plaintiff, in an effort to support his claim that his license plate was not dirty and therefore did not justify the traffic stop, submitted with his summary judgment papers black and white photographs of the front and rear license plates on his vehicle. (*See* Dkt. 30 at 47-49.) Plaintiff claims that the photographs, which are not dated, were taken when the vehicle was in the impound yard and after the vehicle was released from impound. (*See id*. at 25.)

However, there is no evidence in the record demonstrating that the photographs accurately depict plaintiff's vehicle as it appeared at the time he was pulled over by defendant Briels. The

REPORT AND RECOMMENDATION
PAGE - 6

Court notes that the photos appear to have been taken during daylight hours, while plaintiff's traffic stop occurred at night. It is unclear what wholly different lighting conditions may have had on the license plate particularly where, as here, the plate apparently had a yellow-tinted cover on it. The Court notes as well that one of the photographs of plaintiff's rear license plate is very difficult to read, lending support to defendant Briels' claim that the license plate was illegible. (*See* Dkt. 30 at 47.) Plaintiff's photographs simply do not support his claim that the condition of his license plate did not justify the traffic stop.

The traffic stop at issue here passes constitutional muster because the record establishes that defendant Briels had probable cause to believe that a traffic violation had occurred; *i.e.*, that plaintiff was driving a vehicle with an illegible license plate. Defendant Briels is therefore entitled to summary judgment with respect to this claim.

<u>False Arrest</u>

Plaintiff also asserts that defendant Briels effectuated an unlawful arrest because he failed to properly investigate the validity of the warrants which served as the basis of plaintiff's arrest. (*See* Dkt. 11 at 3, 6, 9.) Plaintiff complains that he tried to explain to defendant Briels that the warrants had been quashed at a court hearing earlier that day, and that he handed defendant Briels his court papers to demonstrate this, but that defendant Briels refused to look at the papers. (*See id*. at 3.)

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In order to prevail on a § 1983 claim for false arrest and imprisonment, a plaintiff "must demonstrate that there was no probable cause to arrest him." *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998). "Whether probable cause exists depends upon the reasonable

REPORT AND RECOMMENDATION
PAGE - 7

conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

The record establishes that prior to effectuating plaintiff's arrest, defendant Briels verified the warrants through the statewide records system, WACIC, and confirmed the existence and validity of those warrants with the originating agency, the Snohomish County Sheriff's Office. (Dkt. 27, ¶¶ 8, 10, 11, 12.) Only after the Snohomish County Sheriff's Office confirmed the warrants, and indicated that they wanted plaintiff arrested on those warrants, did defendant Briels place plaintiff under arrest and book him into jail. (*See id.*, ¶¶ 13, 14.)

Plaintiff argues that defendant Briels should have done more to investigate the validity of the warrants particularly where, as here, plaintiff had paperwork showing that the warrants had been quashed.[3] (*See* Dkt. 30 at 7.) Plaintiff suggests that defendant Briels should have contacted the court, called his supervisor, or brought the paperwork plaintiff possessed to the jail for verification. (*See id.*) However, plaintiff fails to demonstrate that any of these suggested actions would have prevented his arrest.

The traffic stop occurred at almost midnight on a Monday night and the court would not have been open at that hour to provide any additional confirmation regarding the warrants. And, given that defendant Briels had already confirmed the validity of the warrants, and been advised that the Snohomish County Sheriff's Office wanted those warrants to be executed, it is difficult to understand what benefit might have been achieved by contacting defendant Briels' supervisor who presumably would have had access to no more information that defendant Briels had at that point

---

[3] Plaintiff has not supplied a copy of the paperwork which he claims he tried to show defendant Briels to establish that the warrants had been quashed.

REPORT AND RECOMMENDATION
PAGE - 8

in time. Finally, to the extent plaintiff claims that defendant Briels should have brought plaintiff's paperwork to the jail for verification, plaintiff is correct that this would have been a reasonable step for defendant Briels to take. However, whether or not defendant Briels actually took this step does not speak to whether defendant Briels acted reasonably in effectuating plaintiff's arrest in the first instance.

Plaintiff appears to be of the belief that his possession of court papers showing that his warrants had been quashed should have been sufficient to preclude his arrest. However, defendant Briels was not required to simply accept the validity of plaintiff's paperwork at the time of the traffic stop, particularly in light of the information he received from WACIC and the Snohomish County Sheriff's Office. The record supports the conclusion that defendant Briels had probable cause to arrest plaintiff based on the information he received. Moreover, as defendant correctly points out, even assuming he did not have probable cause to arrest plaintiff based on what appeared to be two outstanding warrants, he did have probable cause to arrest plaintiff based on plaintiff's admission that he was driving with a suspended license. For these reasons, defendant is entitled to summary judgment with respect to this claim.

## CONCLUSION

For the foregoing reasons, this Court recommends that defendant's motion for summary judgment be granted, that plaintiff's cross-motion for summary judgment be denied, and that plaintiff's amended complaint and this action be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report

REPORT AND RECOMMENDATION
PAGE - 9

and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 12, 2018**.

DATED this 20th day of September, 2018.

Mary Alice Theiler
United States Magistrate Judge